AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

United States of America
v.
Elisael Burgos Vasquez

*Defendant(s)*

Case No. 8:17MJ1254-T-AAS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 09, 2017 in the county of Hillsborough in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) | Possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Keith M. Hubbard, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 10, 2017

*Judge's signature*

City and state: Tampa, FL

AMANDA A. SANSONE, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Keith M. Hubbard, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA) assigned to the Tampa District Office, Task Force Group 2, and as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. I have worked as a Task Force Officer with the DEA since June of 2014, and I am employed as a narcotics detective for the Polk County Sheriff's Office in Polk County, Florida. I have been employed at the Sheriff's Office since August of 2007, and have been a narcotics detective since November of 2009. During my employment, I have conducted investigations and received specialized training in techniques dealing with the unlawful distribution of narcotics, possession with intent to distribute controlled substances, use of communication facilities to conduct narcotics transactions, and associated conspiracies

3. Prior to my employment at the Polk County Sheriff's Office, I was employed at the Bartlett Police Department in Bartlett, Tennessee for approximately six years. I worked in the patrol division for the Bartlett Police Department.

4. Since being assigned to the Tampa District Office, I have been involved in dozens of drug-related investigations that culminated in the arrest of numerous persons for violations of both state and federal narcotics laws. These investigations have resulted in the arrests of individuals who have smuggled, received, and distributed controlled substances, including MDMA, cocaine, heroin, cannabis, and methamphetamine and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations have resulted in seizures of illegal drugs, proceeds of the distribution of those illegal drugs, and evidence associated with those violations.

5. While acting in an official capacity, I have directed numerous confidential sources to successfully infiltrate various narcotics organizations by way of intelligence gathering, participation in consensual recordings, and monitored purchases of controlled substances. I have executed search warrants for controlled substances, related documents, and have conducted surveillance in connection with numerous narcotics investigations. I am familiar with the operation of illegal drug trafficking organizations in the central Florida area, as well as generally throughout the United States.

6. I have participated in both state and federal Court-ordered interceptions of wire communications involving cellular telephones, and I am familiar with the ways in which narcotics traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the

use of telephones and digital paging devices to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions.

7. The facts in this Affidavit have come from my personal observations, my training and experience, and information obtained from other agents, task force officers, state and local law enforcement officers, and other witnesses. This Affidavit is submitted for the limited purpose of establishing probable cause for the arrest of **Elisael BURGOS VASQUEZ**, in regards to possession with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841. The affidavit does not include each and every fact known to me or other law enforcement officers concerning this investigation. Unless otherwise stated, the term "agent" applies to any federal, state, or local law enforcement officer involved in this investigation.

## PROBABLE CAUSE

8. On April 09, 2017, at approximately 9:42pm, Hillsborough County Sheriff's Office Deputy Dahl conducted a traffic stop on a black Chrysler 300, bearing Florida tag EYSU43, at 1420 Shell Pointe Road, Ruskin, Florida for failure to stop at a stop bar in violation of Florida State Statute 316.123.

9. Upon conducting the traffic stop on the vehicle, Deputy Dahl attempted to speak to the driver of the Chrysler 300, Hector Manuel Vargas-Rosas, but Mr. Vargas Rosas did not speak English. Deputy Dahl spoke with the left rear passenger **Elisael BURGOS VASQUEZ**, who did speak English and translated for Deputy

Dahl. Deputy Dahl requested Mr. Vargas-Rosas driver's license, at which time Mr. Vargas-Rosas stated he did not have a driver's license.

10. Deputy Dahl then requested assistance from a Hillsborough County Sheriff's Office K-9 deputy, and K-9 Deputy Lariz arrived at the traffic stop at approximately 9:47pm.

11. Deputy Lariz spoke to **Elisael BURGOS VASQUEZ** and **BURGOS VASQUEZ** stated that agents would find "some stuff" in the car, and that he claimed full ownership of what would be found.

12. Deputy Lariz advised **BURGOS VASQUEZ** of his *Miranda* Rights at which time **BURGOS VASQUEZ** stated he wanted to cooperate and did not want a lawyer.

13. Deputy Lariz asked **BURGOS VASQUEZ** what would be found in the car, and **BURGOS VASQUEZ** stated it was crack and that it would be found in the bags, which were located in the car. Deputy Lariz asked how much there would be and **BURGOS VASQUEZ** stated it would be a lot.

14. Deputy Lariz deployed his K-9 partner, "Storm," to conduct an exterior air sniff of the Chrysler 300 during which Deputy Lariz stated "Storm" alerted to the vehicle for the odor of narcotics.

15. Deputy Lariz conducted a search of the vehicle based on the K-9 alert, during which Deputy Lariz found approximately five (5) kilograms of suspected methamphetamine ("Ice") inside of a black duffle bag. The black duffle bag was

located in the trunk of the vehicle. The methamphetamine was packaged inside five separate Tupperware containers.

16. After Deputy Lariz located the methamphetamine, he asked **BURGOS VASQUEZ** if it was crack or "Ice," and **BURGOS VASQUEZ** stated that it could be "Ice."

17. The driver of the vehicle, Mr. Vargas-Rosas, was placed under arrest for driving without a driver's license in violation of Florida State Statute 322.03, by the Hillsborough County Sheriff's Office.

18. On April 09, 2017, at approximately 10:25pm, DEA Task Force Officer ("TFO") Woody, as witnessed by DEA TFO Tony Capo, conducted a field test on the methamphetamine located in the trunk of the Chrysler 300, which yielded a presumptive positive result for methamphetamine.

19. On April 09, 2017, at approximately 11:00pm, **BURGOS VASQUEZ**, was placed under arrest by DEA and transported to the DEA Tampa District Office to be interviewed.

20. On April 10, 2017 at approximately 12:18am, DEA Special Agent ("SA") Morris Moody advised **BURGOS VASQUEZ** of his *Miranda* Rights, which **BURGOS VASQUEZ** stated he understood and agreed to speak with agents. DEA Tampa SA Morris Moody, TFO Keith Hubbard, and TFO Tony Capo conducted a post-*Miranda* interview with **BURGOS VASQUEZ.**

21. During the post-*Miranda* interview, **BURGOS VASQUEZ** admitted that the methamphetamine found in the Chrysler 300 belonged to him. **BURGOS VASQUEZ** stated that he traveled to Houston, Texas to pick up methamphetamine. He stated that he took a bus from Lake Placid, Florida to Houston, Texas on Thursday, April 06, 2017. While in Houston, he received the methamphetamine from an unknown Hispanic male in Houston, Texas. He stated he got on a bus in Houston, Texas on April 09, 2017, and traveled to Wimauma, Florida.

22. **BURGOS VASQUEZ** further admitted that this is the second trip that he took to Houston to pick up methamphetamine. During the first trip in March of 2017, he picked up three kilograms of methamphetamine and delivered it to an unknown Hispanic male in Wimauma, Florida. **BURGOS VASQUEZ** stated he was paid $3,000 for the first trip to Houston, Texas.

23. Based upon the information contained in this Affidavit, I submit that there is probable cause to believe that **Elisael BURGOS VASQUEZ** did possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii).

FURTHER AFFIANT SAYETH NAUGHT.

Keith M. Hubbard, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me
this 10th day of April, 2017, in Tampa, Florida.

AMANDA A. SANSONE
United States Magistrate Judge